UNITED STATES, Appellee

v

CHARLES G. WILSON, Technical Sergeant,
U. S. Air Force, Appellant

10 USCMA 398, 27 CMR 472

No. 12,563

Decided May 1, 1959

*Lieutenant Colonel Philip J. Williamson* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Sam F. Carter* and *Lieutenant Colonel James L. Kilgore*.

*Major Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused stands before us convicted by general court-martial of three unauthorized absences, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. The sole issue presented for resolution is whether the accused was deprived of a speedy trial. A total of three hundred and seventy-nine days elapsed between the date of accused's confinement after his first unauthorized absence and his trial, but during this period the accused unlawfully absented himself on two subsequent occasions thus adding to both his own woes and those of the Government. The salient events occurring in the interim are numerous and to aid the reader, we set them forth in chronological order.

March 4, 1957, accused went absent without leave from Loring Air Force Base, Maine.

June 27, 1957, accused surrendered to the F. B. I. at Asheville, North Carolina.

July 2, 1957, accused was delivered to military authorities at Donaldson Air Force Base, South Carolina (1400 miles from his home base).

July 18, 1957, accused departed Donaldson Air Force Base, South Carolina, for return to Loring Air Force Base, Maine.

July 20, 1957, accused arrived at Loring Air Force Base, Maine.

July 22, 1957 (approximately), charges were preferred.

July 29, 1957, accused was released from the base guardhouse.

August 21, 1957 (approximately), accused was admitted to the United States Naval Hospital at Chelsea, Massachusetts, some four hundred and fifty miles from his home station, for psychiatric examination.

September 18, 1957 (approximately), accused was released from the United States Naval Hospital at Chelsea, Massachusetts.

October 16, 1957, after further preliminary inquiry, charges were preferred alleging absence without authority and the issuance, on February 23, and March 1, 1957, of two worthless checks with intent to deceive. Other specifications were dropped.

October 21, 1957, charges were referred for pretrial investigation.

October 23, 1957, the investigating officer made his report, recommending trial by special court-martial.

October 24, 1957, charges were forwarded to the Commander, Eighth Air Force, at Westover Air Force Base, Massachusetts, with a recommendation for trial by general court-martial.

At about this time, the accused made a request to plead guilty before special court-martial.

October 29, 1957, the staff judge advocate's pretrial advice was submitted.

November 5, 1957, the charges were referred to trial by general court-martial.

November 12, 1957, the accused was served with the charges and the trial date set for December 10, 1957.

November 19, 1957, accused absented himself without authority.

December 7, 1957, accused returned voluntarily to his organization and station.

December 17, 1957, accused absented himself without authority.

March 25, 1958, accused surrendered to the Air Police at Donaldson Air Force Base, South Carolina.

March 31, 1958, accused departed Donaldson Air Force Base, for his home station.

April 2, 1958, he arrived at Loring Air Force Base.

April 3, 1958, charges alleging the second and third absences without leave were preferred.

April 16, 1958, new charges were received by the officer exercising summary court-martial jurisdiction.

April 16, 1958, the charges were referred for pretrial investigation.

April 17, 1958, a report of investigation, recommending trial by general court-martial was submitted.

April 21, 1958, charges were forwarded to the officer exercising general court-martial jurisdiction (separate station).

April 29, 1958, the staff judge advocate's advice was submitted.

April 29, 1958, all charges were referred for trial by general court-martial.

May 1, 1958, the charge sheet was forwarded to trial counsel.

May 14, 1958, the accused was served with the final charges and specifications.

July 11, 1958, the accused was arraigned, tried, convicted, and sentenced before a general court-martial.

In United States v Callahan, 10 USCMA 156, 27 CMR 230, we stated that in determining whether an accused has been denied the right to a speedy trial we must look at all the circumstances. United States v Hounshell, 7 USCMA 3, 21 CMR 129; 14 Am Jur, Criminal Law, § 136. The foregoing chronology is largely self-explanatory but several of the items warrant further discussion. The delay between July 2, 1957, and July 18, 1957, at Donaldson Air Force Base was occasioned by the necessity of securing proper disposition instructions for the accused who, at that time, had been absent without authority for a period of more than three months and

had surrendered himself over one thousand miles from his home station. Charges were originally preferred two days after accused's return to Loring Air Force Base and upon his request he was released from confinement. It was nearly four months later, on November 12, 1957, that the accused was served with the charges and the date of trial set. However, under all the circumstances, we cannot term this protraction unreasonable. During this period the accused's admission to a naval hospital was arranged, and he spent almost a month undergoing psychiatric examination necessitated by an alleged loss of memory on his part; he had to be transported to and from the hospital which was some four hundred and fifty miles from his place of duty; a further preliminary inquiry was conducted in accordance with paragraph 32 of the Manual for Courts-Martial, United States, 1951, which resulted in a benefit to the accused in that certain specifications originally charging him with offenses were withdrawn; an investigation was held under the provisions of Article 32 of the Uniform Code of Military Justice, 10 USC § 832; the charges as modified were forwarded to the general court-martial convening authority who was located at another air base; the pretrial advice was prepared by this commander's staff judge advocate; and the charges were returned to the accused's group commander. In view of the necessity for such investigation and the procurement of documents from civilian as well as military sources, we cannot find in this period an "arbitrary, oppressive or vexatious delay" prejudicial to the rights of the accused. See Chinn v United States, 228 F2d 151 (CA4th Cir) (1955).

One week after accused was notified of the date of his prospective trial, he went absent without authority. His voluntary return nearly three weeks later was short-lived, for ten days thereafter he again unlawfully parted company with the Air Force, this time for more than three months. On March 25, 1958, he surrendered himself to military custody in South Carolina, and approximately a week later was

returned to his station at Loring Air Force Base. While more than three months elapsed between this date and accused's ultimate trial, we again are unable to hold this delay undue or unreasonable. It was well settled that an accused cannot exploit a delay which is attributable primarily to his own acts. Pollard v United States, 352 US 354, 77 S Ct 481, 1 L ed 2d 393; United States v Lustman, 258 F2d 475 (CA2d Cir) (1958). Even a casual perusal of the chronology set forth above will indicate that a substantial segment of this delay was occasioned by the accused's final absence, and the necessity for additional investigation and procurement of morning report extracts from the unit which had taken custody upon his surrender in South Carolina must be taken into account.

Still another facet of this case compels our holding against the accused. The law of this Court and ■■■■■■ ■ other Federal courts clearly establishes that the right to a speedy trial is personal and can be waived if not promptly asserted by a timely demand. United States v Hounshell, supra. United States v Lustman, supra. The record indicates the accused requested trial on the first offense during October 1957. Pretermitting the fact that his request was conditioned upon trial by special court-martial, the Government complied with the demand and set the case for hearing. Prior to that date, accused again went absent without leave and did not return until three days before the time set for hearing. When he was again subject to military control, there was a new offense which required processing. Accused only stayed ten days and then again left for parts unknown. Accordingly, even if we ■■■■■■ ■ were to say his demand placed a burden on the Government to proceed with the trial of the first offense forthwith, the accused's criminal conduct relieved the Government of the duty of hearing the case on the date set. As to the other offenses, there is uncontradicted testimony that no request for trial was ever made subsequent to the final absence. We must reject the argument that, as to the latter period, the right to a speedy trial was preserved by the initial request. As previously mentioned, knowing the date of his trial had been set, accused absented himself unlawfully on two further occasions, and whatever the effect of his original request, it was most assuredly vitiated by this subsequent conduct. While we indicated in United States v Hounshell, supra, that situations peculiar to the military necessitate our caution in applying the principle of waiver, we find here no reason for doubt in connection with the period of time between the accused's final absence and his trial. That period of time was not excessive and, absent any request, the accused is not in a position to complain. In this regard, the question arises that no demand was made because accused was uncertain as to whom to inform of his desires. We need not consider this point for the reason that no request was called to the attention of any military authority. But we might suggest as a working rule for the ■■■■■■ ■ services that we are inclined to take a broad view as to those to whom accused's request for a speedy trial may be directed. At the moment, we merely mention that the request might be sufficient if made to any officer who at the time is working in a military justice capacity, such as, the accused's commanding officer, trial counsel, the law officer, convening authority, or even the inspector general.

While a substantial period elapsed here between initial confinement and trial, the record establishes no impairment of any defense available to the accused, and the factors and circumstances herein discussed compel our holding that he was not denied a speedy trial within the fair meaning of that guarantee. Finally, lest any of the language in this opinion be misconstrued, we caution the services that they ought to make every reasonable effort, consistent with the right of the defendant to prepare his defense, to process all cases expeditiously through both the preliminary and trial stages,

Moreover, when the issue is raised, the facts necessary to a ■ proper disposition of the question should be incorporated in the record. The right to a speedy trial, when preserved by an accused, will be fully protected by this Court, and the services ought to be able to present us with a record which reflects credit on the proceedings.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

The issue presented in this case is of the utmost importance to both the Government and the accused. It is an issue which has concerned individuals and governments for centuries. It is the broad question of the delay of justice.

From the historic day at Runnymede, in 1215, when the English barons exacted the Magna Carta from King John, a guiding principle in English, and later American, jurisprudence has been that justice delayed is justice denied. So significant and fundamental is the right to a speedy trial that our forefathers specifically provided for it in the Bill of Rights. Thus, the Sixth Amendment to the Constitution provides in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . ."

The Congress, in enacting the Uniform Code of Military Justice, provided in Article 10, 10 USC § 810:

". . . When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

In Article 33 of the Code, supra, 10 USC § 833, it provided:

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

It is the Government acting through its officers and agents which controls the trial machinery and ■ has the responsibility of insuring a speedy trial to the accused. Where a claim of denial of a speedy trial is made, therefore, the burden is on the Government to show that it has proceeded with reasonable diligence.[1]

This Court has followed the general rule that where an accused complains of a deprivation of his right to a speedy trial, each individual case must be considered on its merits, and it is a question of reasonableness under all the circumstances. Cf. United States v Callahan, 10 USCMA 156, 27 CMR 230.

Reasonableness as a test, of course, means different things to different people. No definite numerical ■ standard can be adopted which would be applicable to all cases. A delay of a stated period of time, while unreasonable in one case, may be perfectly proper in another where the circumstances are different. In determining what period of time is ordinarily considered reasonable, it is proper for this Court to consider service regulations bearing on the matter. In that connection, Air Force Regulation 111–10, dated September 27, 1951, sets forth certain "time standards for

---

[1] If anything, this burden on the Government should be greater in the military where there is no procedure for the accused to obtain his release on bail and where there is no opportunity to seek *habeas corpus* in the court before which his trial is pending. Although, as the opinion notes, a request for trial can be directed to the convening authority and others, there is no practical way to contest the convening authority's action or inaction until trial so that such request merely becomes evidence of accused's good faith and serves to add to the Government's burden of showing reasonable diligence.

the disposition of court-martial matters." Any time consumed in excess of the standards therein announced is considered to be "delay" and is required to be fully explained in the chronology sheet in the record of trial.[2]

For a general court-martial, that regulation provides that charges should be preferred within three days after an accused is arrested or confined by military authorities of the command in which trial is held. Five days thereafter the report of the Article 32 (Code, supra, 10 USC § 832) investigation should be complete. One week from that date charges should be referred for trial, and ten more days may elapse until sentence or acquittal, a total of twenty-five days in all.

This, in essence, is an administrative interpretation that the expiration of the above periods of time is reasonable and should be construed to mean that delays exceeding those limits are unreasonable unless satisfactorily explained.

Turning to the facts of the instant case, we have the accused returning to his home base on July 20, 1957, after having been absent without leave. Approximately two days later charges were preferred. Appellate Exhibit 1, which contains the out-of-court hearing wherein counsel presented argument on the defense motion to dismiss, shows that the law officer did not there admit evidence of accused's hospitalization. In considering the correctness of his ruling, this Court should not rely upon facts not in evidence before him at the time he ruled. Cf. United States v Wilson, 10 USCMA 337, 27 CMR 411.

As to Charge I, the chronological facts presented to the law officer included no more than the following:[3]

July 20, 1957 ...................Accused returned to home station.
July 22, 1957 (approximately) ....Charges preferred.
October 16, 1957 ...............New and Additional Charges preferred.
October 21, 1957 ...............Charges referred for pretrial investigation.
November 12, 1957 .............Accused served with copy of charges and trial set for December 10.
November 19, 1957 .............Accused goes absent without leave.
December 7, 1957 ...............Accused returned to station.
December 17, 1957 (approximately) Accused again goes absent without leave.

Nearly three months elapsed after charges were initially preferred before they were referred to an ■ investigating officer for an Article 32 investigation. This delay is unsatisfactorily explained. Trial counsel's statement concerning the time necessary to investigate the charges shows nothing to justify the delay in ordering the investigation. A delay of three months after arrest before an investigation is ordered is patently unreasonable. Nor is any reason shown why trial originally scheduled for December 10 was not held at that time. The accused, though absent without leave in November, had returned to the base by December 7th. The accused, testifying in mitigation, stated that he telephoned the staff judge advocate on December 12th or 13th, and asked when he was going to be court-martialed. The reply, undisputed in the record, was, "It's been delayed, sometime in February and it's not definite then."

Under the circumstances, it is manifestly clear to me that the Government did not sustain its burden of showing

---

[2] In this regard, the chronology sheet in this case simply excludes the earlier proceedings from its computation and starts with April 2, 1958.

[3] Not all the facts in this and a later chronology in this opinion were before the law officer when he ruled. The additional facts are recited for clarity of discussion. The majority opinion makes no attempt to limit its consideration to those facts before the law officer at the time of his ruling.

404

reasonable diligence in proceeding to trial on Charge I. I would, therefore, dismiss Charge I.

As to the Additional Charge, the chronology before the law officer showed no more than the following:

April 2, 1958 .................. Accused returned to home station from an absence without leave.
April 3, 1958 .................... Charges preferred.
April 17, 1958 ................. Investigating officer's report completed.
May 14, 1958 ................... Accused served with charges.
July 11, 1958 ................... Accused tried, convicted, and sentenced.

Here, I am not prepared to say that any delay was unreasonable as a matter of law except that delay ▌ from May 14, when accused was served with charges, until July 11 when he was tried. As to this approximate two-month period, the Government again failed to show it proceeded with reasonable diligence.

The trial counsel stated to the law officer that he waited until June 12, 1958, for the arrival of a deposition from the First National Bank of Marion, North Carolina. This, however, does not serve to show reasonable diligence on the part of the Government as there was no showing as to when the deposition was requested. And the charge sheet reflects that the alleged offenses upon which information would be sought from that bank were committed on February 23, 1957, and March 1, 1957—both more than fifteen months before the deposition was received on June 12, 1958. No satisfactory explanation is offered as to why the deposition could not have been secured sooner. Trial counsel did say that "nothing in this matter in the way of obtaining evidence or running an investigation on a bad check charge can commence prior to the time the man returns, as in this case, from an absence without leave." Even if we were able to accept this contention, the record reflects that the Article 32 investigation—which included the charges concerning the checks—was completed on October 23, 1957. Thus, waiting for a deposition from the bank does not satisfactorily explain the delay from May 14, 1958, to July 11, 1958.

Under the circumstances of this case, where there was already an un-

reasonable delay as to Charge I, and considering the fact that the specifications of the Additional Charge were for absence without leave—which are notoriously simple cases to investigate and prosecute—the Government's burden, if anything, is greater in showing reasonable diligence. Rather than making such a showing, it has by the further delay compounded the effect of its original inaction.

I find, therefore, that the Government has not sustained its burden in showing reasonable diligence in proceeding to trial. The accused having been deprived of his Constitutional and statutory right to a speedy trial as to all the Charges, I would order all Charges dismissed.

In summary, the majority here not only reaches what I view as an improper result but it considers matters not before the law officer at the time he ruled. This is contrary to our recent holding in United States v Wilson, supra. The opinion ignores the fact that no explanation was given as to why trial was not held on December 10, 1957, as scheduled, even though accused was present and urging an early trial. It erroneously permits subsequent misconduct of the accused to relate back and vitiate an earlier delay. And, finally, the opinion improperly places upon the accused the burden of making a request for trial. This, again, is in contravention of this Court's statement in United States v Wilson, supra, that "demand for trial is not an invariable condition precedent to a motion to dismiss the charges on the ground of deprivation of a speedy trial." Such a complete about-face in approach within a period of two weeks cannot but confuse the law in this important area.