**UNITED STATES**

v.

**Joseph R. WAGER, 332 50 4837, Hospitalman (E-3), U. S. Navy.**

**NCM 79 1484.**

U. S. Navy Court of Military Review.

Sentence Adjudged 6 April 1979.

Decided 31 Oct. 1980.

James R. Klimaski, Esq., Individual Defense Counsel.

LT Larry A. McCullough, JAGC, USN, Appellate Defense Counsel.

LT J. G. Van Winkle, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C. J., and SANDERS and DONOVAN, JJ.

SANDERS, Judge:

At a trial by general court–martial composed of members, appellant was convicted of stealing a camera; soliciting another to steal, conspiring to steal and stealing an air conditioner; wrongfully appropriating two trucks; and communicating a threat, in violation of Articles 81, 121 and 134, 10 U.S.C. §§ 881, 921 and 934, Uniform Code of Military Justice (UCMJ). His sentence to confinement at hard labor for 21 months, forfeiture of $200.00 pay per month for 21 months, reduction to pay grade E–1, and a bad conduct discharge was approved on review below.

Appellant has assigned the following errors:

## I

APPELLANT WAS DENIED HIS RIGHT TO INDIVIDUAL MILITARY COUNSEL.

## II

THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE MOTION TO REOPEN THE ARTICLE 32 INVESTIGATION WHERE THE INVESTIGATING OFFICER HAD REFUSED TO ORDER TWO PRINCIPAL WITNESSES NOT TO DISCUSS THEIR TESTIMONY, AND WHERE THE INVESTIGATION WAS TAINTED BY THE APPEARANCE OF PARTIALITY ON THE PART OF THE INVESTIGATING OFFICER.

## III

MILITARY JUDGE ERRED IN REFUSING TO DISMISS CHARGES FOR LACK OF SPEEDY TRIAL.

A. Accused Was Prejudiced By The Government's Failure To Provide Him With His Right To A Speedy Trial As Confinement In Excess Of Three Months Is Presumptively A Violation of Article 10, UCMJ.

B. Failure Of The Government To Act Expeditiously In Forwarding The Charges To The General Court–Martial Authority Is A Violation Of Article 33, UCMJ And Indicative Of A Lack Of Due Diligence And An Oppressive Design On The Part Of The Government To Delay The Trial.

C. The Extended Delay Regarding Charge I, Specification 1, And Charge II, Specification 2 Prejudiced The Accused By Denying His Right To A Speedy Trial.

## IV

### PRETRIAL CONFINEMENT OF HM WAGER WAS ILLEGAL.

We find no merit in the assignments and affirm.

### I

On 8 June 1978 appellant requested that Commander E. M. Byrne, JAGC, USN, of the Office of the Judge Advocate General, with whom he had never had an attorney–client relationship, be made available to serve as individual military counsel at his then pending trial by special court–martial. When this request was denied by the Acting Judge Advocate General, appellant on 27 June 1978 asked the Secretary of the Navy, via the Judge Advocate General, to review and reverse this determination. The Acting Judge Advocate General, citing paragraph 48*b*, *Manual for Courts–Martial, 1969 (Rev.)* (MCM), correctly declined to forward the request, treated it as a request for reconsideration and again refused to make CDR Byrne available. Further charges having been preferred and the case having been referred to a general rather than a special court–martial, appellant on 3 January 1979 once again requested the services of CDR Byrne and again was refused. Finally, the request was renewed on 12 March 1979 and denied the following day. A motion to dismiss the charges and specifications because of this failure to provide appellant with counsel of his choice was denied by the military judge.

■ An accused has the right to be represented at a general court–martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available or by the defense counsel detailed for him. If he has counsel of his own selection, an accused may retain detailed counsel to act as associate counsel.

Article 38(b), UCMJ, 10 U.S.C. § 838(b); paragraph 48*a*, MCM.

■ Sometime prior to 18 January 1979 appellant employed civilian counsel. The Government argues that by this action appellant waived his right to continue to seek individual military counsel. We do not agree. The choice is between being represented by civilian counsel or being represented by individual military counsel, *United States v. Jordan*, 22 U.S.C.M.A. 164, 46 C.M.R. 164 (1973), not between being represented by civilian counsel and making a request for individual military counsel which may well be refused leaving accused at trial with only appointed counsel. The law does not require such a gamble. An accused with civilian counsel may request individual military counsel. If the latter is made available, accused must then elect between the two. *See United States v. Moore*, 7 M.J. 693 (N.C.M.R.1979). This in substance is what appellant did when he indicated that if CDR Byrne were made available, his civilian counsel would be released. (R. 221).

■ At the time of the initial request, in June 1978, CDR Byrne's primary duty was that of head of the Regulations Branch, Administrative Law Division, Office of the Judge Advocate General. In January and March 1979, he was Deputy Assistant Judge Advocate General, Military Justice. The Regulations Branch was responsible for the review, among other things, of submissions by the Navy for publication in the Federal Register and proposed changes to the Manual of the Judge Advocate General; it also provided legal opinions on the Freedom of Information Act and the Privacy Act. CDR Byrne was then likewise serving on the Department of Defense Privacy Board Legal Committee and as special advisor to the Office of the Chief of Naval Operations for the review of a proposed regulation and directive. Since becoming Deputy Assistant Judge Advocate General, Military Justice, in addition to the routine review of outgoing correspondence and normal office administration, CDR Byrne has served as Chairman, Joint Services Committee on Mil-

itary Justice. Under a tight schedule imposed by the Department of Defense, this committee and a similar Navy group chaired by CDR Byrne was responsible for the expeditious review of a proposed new Chapter XXVII, MCM. CDR Byrne was also personally preparing extensive and long awaited changes to the *Manual of the Judge Advocate General* necessitated by *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), *vacated in part*, 5 M.J. 246 (C.M.A. 1978), and its progeny.

A determination of CDR Byrne's availability to serve as appellant's individual military counsel required the exercise of the Judge Advocate General's discretion in the light of all the circumstances, including the duties assigned him and the feasibility of postponing them, any military exigencies and similar considerations. The decision demanded a balance between the conflicting demands upon his service. *United States v. Quinones*, 1 M.J. 64 (C.M.A.1975); *United States v. Cutting*, 14 U.S.C.M.A. 347, 34 C.M.R. 127 (1964).

In our opinion, the Judge Advocate General did not abuse his discretion in failing to make CDR Byrne available nor did the military judge in his determination that CDR Byrne was not reasonably available. The record establishes that had CDR Byrne been required to assume the duties of individual military counsel in this case, the orderly administration of military justice at the departmental level would have been seriously obstructed. *United States v. Vanderpool*, 4 U.S.C.M.A. 561, 16 C.M.R. 135 (1954).

## II

Lieutenant Commander G. R. Greiveldinger, JAGC, USN, the pretrial investigating officer, had previously sat as military judge at the special court–martial of Hospitalman Apprentice G. L. Gahlbeck, USN. Charged with the larceny of a camera from a Navy Exchange, Gahlbeck pled guilty to its wrongful appropriation but was found guilty as charged by the military judge sitting alone. During the inquiry into the providency of his plea and later during his testimony Gahlbeck stated that he took the camera and subsequently gave it to appellant to keep but that appellant did not know that the camera had been stolen.

Appellant was charged with the larceny of the same camera at the same time and alternatively with receiving the camera knowing it to have been stolen.

When the impartiality of the pretrial investigating officer was questioned, LCDR Greiveldinger indicated at the investigation and testified at appellant's trial that appellant's involvement in the crime was not an issue at the Gahlbeck trial and, therefore, he had no cause to and did not make any determination as to whether Gahlbeck was telling the truth concerning appellant's involvement. LCDR Greiveldinger further testified that in making his recommendations to the convening authority he did not consider what he had heard at the Gahlbeck trial but only the evidence received at appellant's investigation.

■■ Before a charge is referred to trial by general court–martial it must be thoroughly and impartially investigated by a mature officer, preferably of the grade of major or lieutenant commander or higher, or one who has legal training or experience. Article 32, UCMJ; paragraph 34a MCM. Among its purposes, the pretrial investigation serves as an impartial inquiry into the charges against an accused and as the basis for the recommendation concerning their disposition. *United States v. Cunningham*, 12 U.S.C.M.A. 402, 30 C.M.R. 402 (1961). It may be used as a discovery tool by an accused and protects him from baseless charges. *United States v. Samuels*, 10 U.S. C.M.A. 206, 27 C.M.R. 280 (1959). It should never be reduced to a mere formality for it is judicial in nature and an integral part of the court–martial proceedings. *United States v. Nichols*, 8 U.S.C.M.A. 119, 23 C.M.R. 343 (1957).

■ A military judge may try companion cases; mere exposure to related cases alone is not disqualifying. *United States v. Lewis*, 6 M.J. 43 (C.M.A.1978); *United States v. Jarvis*, 22 U.S.C.M.A. 260,

46 C.M.R. 260 (1973). Similarly, it may be appropriate for a single pretrial investigating officer to conduct the investigations into companion cases so long as the exercise of his functions in one investigation does not impair his impartial consideration of the evidence developed in the other investigation. *United States v. Durr*, 47 C.M.R. 622 (A.F.C.M.R.1973). We therefore see no reason why the officer who presided as military judge at the trial of one co–actor should automatically be disqualified from conducting the subsequent Article 32 investigation into charges preferred against a possible confederate.

Nothing in this record indicates that LCDR Greiveldinger allowed his exposure to the Gahlbeck case to influence his conduct of the investigation into the charges preferred against appellant or that he otherwise failed to conduct the investigation in a judicial and impartial manner. Certainly the results evidence strict neutrality, for LCDR Greiveldinger recommended against the referral of four of the original specifications to trial, including a specification alleging appellant's collusion in Gahlbeck's perjury. Additionally, he recommended that other specifications be downgraded in severity.

At a trial by court–martial, the military judge upon his own motion or upon the motion of counsel may instruct a witness to refrain from discussing his testimony with anyone except counsel or the accused in the case. Paragraph 53*f*, MCM. We see no reason why the same salutary practice should not be observed at pretrial investigations, particularly upon timely request of counsel. Here, however, the refusal of the investigating officer to issue such an admonition did not constitute a substantial failure to comply with the requirements of either the *Manual* or *Code*, nor was there any showing that the failure prevented appellant from properly preparing for trial or otherwise injuriously affected his substantial rights. Paragraph 69*c*, MCM.

The two witnesses whose conduct was of chief concern to appellant were Hospitalman D, USN, and Hospitalman E, USN.

Hospitalman E appeared at the pretrial investigation immediately before D and, invoking his right not to incriminate himself, refused to give any substantive testimony. Hospitalman D testified concerning appellant's admission of complicity in the theft of the camera. At the trial itself D admitted, (R. 989), that he had discussed his previous testimony with E both before and after the investigation though he had been told by some unnamed individual not to do so. Hospitalman E indicated, (R. 1020, 1021), that he talked with D about his testimony briefly after the investigation. Neither was asked if his testimony was influenced by these conversations nor did either volunteer this information. Therefore, there being no showing of collusion or coercion, the finders of fact being fully apprised of the witnesses' conduct, and appellant offering no explanation of what would be gained by further investigation, the military judge did not err in refusing to reopen the investigation.

### III

On 31 May 1978 appellant was served with a Charge Sheet alleging that he stole a camera from the Navy Exchange on 7 February 1978 and alternatively that, on the same date, he received the camera knowing it to have been stolen. The allegations having been referred to a special court–martial, the case was scheduled to be tried on 22 June 1978. In the meanwhile appellant had requested an individual military counsel and the request was denied on 20 June 1978. On 27 June appellant both appealed this denial and asked for a polygraph examination. Three days later he requested that the case be rescheduled for 27 July 1978. Sometime on or before 21 July 1978 appellant employed a civilian counsel who asked for an indefinite continuance to familiarize himself with the case. Shortly thereafter, by agreement of counsel, a trial date of 29 August 1978 was established.

On 22 August 1978, however, the Naval Investigative Service implicated appellant in other misconduct and, as a result, the Government requested a continuance until

27 September for the purpose of referring additional charges to the court–martial. Appellant did not object. On 22 September 1978 the initial charges were withdrawn from the special court–martial and appellant was confined on 28 September. The Naval Investigative Service report on these additional offenses was completed on 4 October 1978, and on 20 October a new Charge Sheet was received by the convening authority resulting in his referring the matter to a pretrial investigation which was to convene on 27 October 1978. On 23 October the defense requested that appellant be given a psychiatric examination and subsequently asked that the pretrial investigation be postponed until 3 November.

The investigation convened on 3 November 1978 and again on 13 November at which time appellant requested a continuance until 20 November. It was rescheduled for 21 November 1978 and was concluded on that date. On 11 December the staff judge advocate submitted his pretrial advice to the convening authority who, on the following day, referred the case to a general court–martial. On 12 December 1978 charges were served on appellant and the case was set for trial on 18 December.

On 18 December 1978 the Government was ready for trial but a continuance until 2 January 1979 was granted appellant since his civilian counsel had withdrawn from the case. Following Article 39(a), 10 U.S.C. § 839(a) sessions held on 2, 3 and 4 January appellant was released from confinement on 5 January 1979, arraigned and, again at his request, a continuance until 1 February was granted. On 18 January a second civilian counsel had made his appearance and requested a further delay until 12 March 1979. From 12 until 22 March, 29 until 31 March and 2 until 6 April 1979 the trial progressed until completion.

 Appellant was in pretrial confinement from 28 September 1978 until 5 January 1979, a period of more than 90 days. This raises a rebuttable presumption that he was denied the speedy trial to which he was entitled under Article 10, UCMJ, 10 U.S.C. § 810. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). When, however, delays occasioned by the defense reduce the period of time attributable to the Government to less than 90 days, the presumption no longer exists. *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974). Here, the Government was ready to proceed to trial on 18 December 1978, 81 days after appellant had been confined, but at the request of the defense the first Article 39(a) session was not held until 2 January 1979. Additionally, during the period 28 September until 18 December 1978 appellant had requested delays in the proceedings totalling 14 days: 7 days to enable him to receive a psychiatric examination, *United States v. McClain*, 1 M.J. 60 (C.M.A.1975), and 7 days to permit the defense to confer with the convening authority.

 Even though the *Burton* mandate has not been violated, it still remains necessary to determine whether the Government has proceeded with reasonable diligence and without deliberate oppression of appellant or a lack of concern for the requirement of expeditious prosecution. This determination requires a functional analysis of all facts involved in the delay. *United States v. Hagler*, 7 M.J. 944 (N.C.M.R.1979).

Specification 1 under Charge I and specification 1 under Charge II were initially preferred on 23 May 1978. Appellant was confined on 28 September 1978, and the remaining charges and specifications were preferred on 20 October and 1 November 1978. The first Article 39(a) session was held on 3 January 1979. Accordingly, the Government is at first blush accountable for a delay of 224 days in respect to the earlier specifications and for a delay of 96 days in respect to the remainder. *United States v. Amundson*, 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975); *United States v. Talavera*, 8 M.J. 14 (C.M.A.1979). Delays requested by the defense for the psychiatric examination, for the conference with the convening authority and to permit new counsel to become familiar with the case, however, reduce the period chargeable to the Government in respect to the later

charges to 63 days. These delays together with those necessitated by the polygraph examination and the employment of the first civilian counsel reduce the period chargeable to the Government in respect to the earlier charges to 128 days.

With these figures in mind, it is noted that this case began in May 1978 with the referral of routine shoplifting and other related charges to a special court–martial. Nothing in the record indicates that the case would not have been disposed of by mid–summer as scheduled but for appellant's reasonable desire to obtain individual military or civilian counsel and otherwise prepare for trial. Unfortunately, by the time defense was ready for trial in late summer, appellant had committed other offenses involving the wrongful appropriation of two trucks and the planning for the larceny of a refrigerator. Charitably the Government proposed to refer these offenses to the same court and asked for a month to investigate the events and prepare charges. The defense affirmatively expressed no opposition to the delay. Before the month was out, however, appellant had threatened a witness. With his patience understandably taxed, in rapid succession the convening authority withdrew the original charges from the special court–martial and had appellant confined. The Naval Investigative Service investigation into appellant's summer activities was completed in early October and, additional charges having been preferred, the matter was referred to a pretrial investigation which convened approximately two weeks thereafter having been delayed for a defense requested psychiatric examination. Approximately five weeks elapsed from the first session of the pretrial investigation until the case's referral to a general court–martial on 12 December 1978, a 1–week hiatus in this period having been requested by appellant. The nature and extent of the investigating officer's task, as well as that of the reviewing staff judge advocate, is perhaps evidenced by the fact that the transcript of the pretrial investigation is 239 pages long. The Government was ready for trial six days later on 18 December 1978

and remained ready until the first Article 39(a) session was held in January 1979.

The underlying cause of the delays in getting this case to trial is therefore seen to be appellant's continuing course of ever more serious misconduct. While the Government is chargeable with the resulting delays necessitated by the preparation and investigation of additional charges, when it moves forward with reasonable dispatch as it did here appellant cannot complain for the delays are attributable to his own acts. *United States v. Wilson*, 10 U.S. C.M.A. 398, 27 C.M.R. 472 (1959). Secondarily, but no doubt as an outgrowth of the number and nature of the charges pending against him, appellant attempted to obtain and perfect the best defense possible. As reflected by the findings and sentence he was to a large degree successful. A spirited, protracted and aggressive defense before trial is proper and commendable; nevertheless, time consumed thereby is not the responsibility of the prosecution. This fact was apparently recognized by appellant since at no time during the development of this case did he demand a speedy trial. *See United States v. Barnes*, 50 C.M.R. 625 (N.C.M.R.1975).

A careful review of the chronology of events, therefore, convinces us that appellant was not denied his right to a speedy trial. The Government processed and brought to trial all the charges with reasonable diligence, minimum inactivity, a total lack of oppressive design and no specific prejudice to appellant. *United States v. Tibbs*, 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965); *United States v. Trasp*, 1 M.J. 1059 (N.C.M.R.1976); *United States v. Hagler*, *supra.*

Article 33, UCMJ, 10 U.S.C. § 833, provides:

When a person is held for trial by general court–martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general

court–martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay.

 Without deciding what effect this article has, if any, when the accused's commanding officer is himself the officer exercising immediate general court–martial jurisdiction over the accused, as was here the case, suffice it to say, as we have indicated, there were satisfactory reasons for not "forwarding" the charges within eight days of appellant's confinement and he was not prejudiced by any failure to do so. Noncompliance with this procedural mandate does not, of itself, require any corrective action. *United States v. Tibbs, supra* at 329; *United States v. Nelson,* 5 M.J. 189, 190 n.1 (C.M.A.1978).

IV

Appellant was confined in the Correctional Facility, Marine Corps Development and Education Command, Quantico, Virginia, on 28 September 1978. On the same date appellant's commanding officer advised the military magistrate for the place of confinement by letter that appellant had been charged with larceny and receiving stolen property and that the possible theft of additional property by him as well as the solicitation to sell controlled substances were being investigated. The magistrate was further informed that statements indicated that appellant had threatened HM3 D, a prospective witness in this case, on several occasions.

At a hearing on the following day appellant stated that he desired counsel present and the magistrate, therefore, rescheduled the hearing for 2 October 1978. On 2 October, with counsel present, the magistrate examined the commanding officer's letter, the Charge Sheet, three statements reciting threats which appellant had made against HM3 D and a statement of HMCS C that appellant had stated that he would not "be around" for a general court–martial. Appellate Exhibits 11–16. At the request of defense counsel the magistrate talked to HMCS C who indicated that appellant had not fled after learning that he was to be

apprehended although he had the opportunity to do so. Consequently, HMCS C did not believe appellant would run away despite his earlier protestations. Upon the completion of this hearing the military magistrate discounted the possibility that appellant would flee to avoid prosecution, (R. 89), but determined that pretrial confinement was appropriate based on "the severity of the offense and the communicated threats". Appellate Exhibit 20.

Defense counsel requested reconsideration and a final hearing was held by the magistrate on 24 November 1978. Evidence was received indicating that appellant's threat to assault D with a pistol was actually a threat to force D to tell the truth using a plastic pistol, Appellate Exhibit 18, and confirming the magistrate's earlier conversation with HMCS C, Appellate Exhibit 17. Defense counsel also urged the magistrate to examine the report of the Pretrial Investigation. After doing so the magistrate continued in his opinion that pretrial confinement was necessary. Appellate Exhibit 21.

 The pretrial confinement of appellant was not illegal. At the outset we reject appellant's contention that it was improper for his case to be referred to a non–lawyer U.S. Marine Corps magistrate. Pursuant to the appropriate regulation, NDW Instruction 1640.2D of 1 June 1973, appellant was confined at the Correctional Facility, Marine Corps Base, Quantico, Virginia. Immediately thereafter, and again in accordance with regulations, the military magistrate for the place of confinement was advised of appellant's status and the necessary hearing held. SECNAV Instruction 1640.10 of 10 August 1978. That the magistrate at this Marine facility was not certified by the Judge Advocate General pursuant to Article 27(b), 10 U.S.C. § 827(b), UCMJ, was a matter entirely within the discretion of the officer exercising general court–martial jurisdiction over the place of confinement who appointed him. *Id.; United States v. Packer,* 8 M.J. 785 (N.C.M.R.1980).

 After reviewing substantial evidence that appellant had made serious

threats against a prospective witness in this case and after considering the feasibility of lesser forms of restraint, the military magistrate determined that confinement was appropriate. We concur. When it is reasonably foreseeable that an accused may commit future acts of serious criminal misconduct, including obstruction of justice, pretrial confinement is justified. *United States v. DeStefano*, 5 M.J. 824 (A.C.M.R. 1978); *United States v. Gaskins*, 5 M.J. 772 (A.C.M.R.1978); *United States v. Burke*, 4 M.J. 530 (N.C.M.R.1977).

Accordingly, the findings and sentence as approved on review below are affirmed.

Chief Judge CEDARBURG and Judge DONOVAN concur.