UNITED STATES

v.

Kenny L. BLAKNEY, Seaman Apprentice, U. S. Coast Guard.

CGCM 9945, Docket No. 797.

U. S. Coast Guard Court of Military Review.

10 Nov. 1976.

Trial Counsel: LT William C. Hain III, USCG.

Defense Counsel: LT Steven J. Delaney, USCG and LT F. David Hoffman, USCGR.

Appellate Defense Counsel: LT Patricia L. Shebest, USCGR.

For the United States: LT Michael L. Kudalis, USCGR.

## OPINION OF THE COURT

ROSENWASSER, Chief Judge:

Pursuant to a pretrial agreement, the accused pleaded guilty to a charge of larceny with eight specifications of thefts of property from the Coast Guard Exchange in Kodiak and a ninth specification alleging the theft of $250 from another source; and to a charge of vandalism in violation of Article 109, 10 U.S.C. § 909, UCMJ. Prior to entry of the pleas, a third charge was dismissed on motion; after acceptance of the guilty pleas, a fourth and fifth charge were withdrawn. Thereafter, the defense submitted a request for trial by judge alone; and the judge approved it. He imposed a sentence of confinement at hard labor for 18 months, bad conduct discharge, forfeiture of $200 per month for 18 months and reduction to seaman recruit.

Honoring the pretrial agreement, the convening authority reduced the confinement to 10 months and suspended the bad conduct discharge for the period of confinement and six months. He also reduced to 10 months the period of pay forfeiture. The pretrial agreement (proposed of course, by the defense) stipulated that the accused could withdraw from the agreement without hindrance before entering his pleas and that he could make an "unfettered election" to plead not guilty.

During the several days of preliminary sessions before the pleas, the judge disposed of some 13 or 14 defense motions. One of these was a motion to suppress a taped confession of the several larcenies and the vandalism—the charges to which the accused subsequently pleaded guilty. It was denied only after the judge heard the extensive testimony and cross-examination of the legal officer who took the confession. Following denial of this motion, the confession was offered and admitted in evidence.

Other motions denied by the judge included: joint motions to dismiss the charges based on defects in the Article 32 investigation and alleged insufficiencies of the pretrial advice under Article 34; a motion to dismiss on the ground that the commanding officer had not completed and signed the space on the charge sheet certifying that he had informed the accused of the charges *before* forwarding the charges; a motion to dismiss based on the failure to submit a written report explaining why the charges had not been forwarded within eight days, as mandated by Article 33 UCMJ; a motion to dismiss because of "cumulative error", asserting that the numerous alleged defects and deficiencies in the preliminary proceedings amounted to a denial of due process.

■ The substance of these motions, denied prior to the pleas of guilty, appears again in the assignment of errors filed with this court. We take up first appellant's assertion that

THE DEFENDANT'S PLEAS OF GUILTY WERE IMPROVIDENT BECAUSE INDUCED BY THE ERRONEOUS ADMISSION INTO EVIDENCE OF INVOLUNTARY PRETRIAL CONFESSIONS.

It is apparent that this assignment of error calls upon us to review the correctness of the judge's ruling refusing to suppress the confession. In reply the government states: "The accused chose to drop the issue of the confession's admissibility by pleading guilty." We agree with the government. A provident plea of guilty waives appellate consideration of a ruling on a preliminary motion to suppress evidence.

■ And this *was* a provident plea. When defense counsel entered the pleas of guilty (R.422) the judge advised the accused that he had the legal right to plead not guilty. He explained that a plea of not guilty would place the burden on the government to prove him guilty beyond a reasonable doubt; that a plea of guilty is "the strongest form of proof known to the law"; that on his pleas alone the court could find him guilty "without receiving any evidence"; and that his pleas would not be accepted unless he realized that by it he was admitting each and every act or omission to which they related.

After further advising the accused that he would be giving up "very important rights" by pleading guilty—he named the right against self-incrimination; the right to a trial of the facts by a court of five members; and the right to be confronted by the witnesses against him—the judge outlined the elements of the offenses to which he had offered the pleas of guilty.

The judge then took up, in chronological order, each of the offenses and questioned the accused as to each. Earlier he had told the accused that he would do so, and that he, the accused, could consult with his lawyers at any time during the questioning, and as often as he wished. He drew from the accused admissions of the essential facts constituting each of the offenses; and the accused amplified his admissions with disclosures of names of other Coast Guardsmen to whom he had sold a stolen shotgun and stereo equipment stolen from the Exchange; and he told of stealing the $250 from a jukebox in the Enlisted Men's Club and later rolling the loot in rolls of quarters. The accused did not at any time refuse to answer a question or stop to consult with his lawyers.

As reflected by this record, the judge's inquiry and advice to the accused complied with the requirements established in *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). But before accepting the pleas, the judge received the accused's assurance that he was pleading guilty voluntarily and of his own free will; that he had had ample

time and opportunity to discuss the case with his lawyers; that he had in fact consulted fully with them and received their advice; that he was satisfied with his lawyers; and that no one had tried in any way to force him to plead guilty. The judge had previously informed the accused what he could be sentenced to; he now asked if there was a pretrial agreement. A defense lawyer told him there was, and the judge examined it without looking at the punishment provision. He then asked the accused if he was pleading guilty not only in the hope of securing a lenient sentence through the pretrial agreement, but also because he believed in his own mind that he was guilty, and the defendant replied:

"Your honor, I'm pleading guilty because I believe that I am guilty."

The judge asked the accused if he understood that he had a legal and moral right to plead not guilty and place the burden on the government to prove guilt beyond a reasonable doubt by legal and competent evidence. The accused replied that he did.

Further, the judge inquired of defense counsel if he had explained to his client and if the latter understood his rights to introduce evidence; and counsel replied:

"He does, Your Honor."

Finally he addressed the defendant once more to ascertain that he fully understood the meaning and effect of the proposed pleas of guilty; and he directed him to consult once more with both of his counsel. After the consultation, counsel informed the judge that their client still desired to plead guilty. Thereafter the accused stood and faced the bench and personally entered his pleas of guilty.

The judge then announced that he found the pleas of guilty to have been made voluntarily and with full knowledge of their meaning and effect and that the accused had knowingly, consciously and intelligently waived his rights against self-incrimination, confrontation and a trial of the facts. He found the pleas to be provident and accepted them; and he thereupon entered the findings of guilty. (R.436).

On this record we also find as a fact beyond a reasonable doubt that the pleas of guilty were voluntary and provident pleas, and that they were not induced by, or the product of, the adverse ruling on the motion to suppress the confession. As a matter of law, a provident guilty plea waives appellate review of a preceding ruling refusing to suppress evidence, whether that evidence is a questionable confession or an item seized on a questionable search. *United States v. Dusenberry*, 23 U.S.C.M.A. 287, 49 C.M.R. 536 (1975); *United States v. Johnson*, 20 U.S.C.M.A. 592, 44 C.M.R. 22 (1971); *United States v. Hamil*, 15 U.S.C.M.A. 110, 35 C.M.R. 82 (1964); *United States v. Otero*, 50 C.M.R. 888 (C.G.C.M.R.1975); *United States v. Straud*, 44 C.M.R. 538 (C.G.C.M.R. 1971). See also *United States v. Mirabal*, 48 C.M.R. 803 (A.C.M.R.1974); *United States v. Jupiter*, 41 C.M.R. 684 (A.C.M.R.1969), pet. den. 19 U.S.C.M.A. 614. In *Dusenberry*, Judge Ferguson wrote:

Although we recognize that the judge's ruling denying the suppression motion placed the accused in the predicament of having to determine whether to plead not guilty and preserve his claim of illegal police conduct or to plead guilty and receive the benefit of his pretrial agreement, we do not believe that such a ruling, even if erroneous, was sufficient to render his plea involuntary or to deprive him of due process of law. Any accused facing trial must ultimately face the same decision of whether to put the Government to the test of proving his guilt beyond a reasonable doubt by legal and competent evidence or to factually admit guilt by a plea of guilty and receive the benefit of a possible pretrial agreement. The mere fact that an accused chooses the latter course and thus waives both his right to a pretrial of the facts and any corresponding right to appellate review of any issues that may have been raised in that proceeding does not mean that the plea of guilty was involuntary. Unless an accused can allege and prove serious derelictions on the part of his counsel sufficient to show that his plea was not a knowing and intelli-

gent act, he is bound by either his own or his attorney's assessment of the law and facts when he admits his guilt by his plea. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

The painstaking inquiry conducted by the military judge here demonstrates that the pleas were indeed truly voluntary; accordingly the appellant is now bound by them. In the circumstances here presented, we hold that it was not necessary for the military judge to further inform the accused that his plea of guilty would foreclose appellate review of the issue of the confession's voluntariness; or, stated differently, that by pleading not guilty and electing to stand trial by a court with members, instead of by judge alone, he could still contest the confession at the trial level and also preserve the issue for appellate review.* Certainly the accused's two lawyers knew that, or were professionally chargeable with that knowledge. The defense had its options open until the very end of the plea inquiry when the accused, following a last consultation with his lawyers, stood up and personally told the court that he pleaded guilty. Thus the accused "is bound by either his own or his attorney's assessment of the law and facts." The defense voluntarily chose to plead guilty and drop the confession issue.

■ Likewise, the accused's voluntary and provident plea of guilty precludes him from now challenging the regularity of the Article 32 investigation and related proceedings preliminary to the trial. The plea waived the objections now raised by appellant in assignments of error asserting that: the Article 32 investigation was fatally defective; "The Article 34 pretrial advice was incomplete and misleading"; the commanding officer failed "to properly complete the certificate of service on the charge sheet"; "the judge erred in denying the defense motion for disclosure of the identity of a possible defense witness"; and that the assignment as a reporter for the Article 32 investigation of one who had given some information to intelligence agents and had also given clerical assistance to the defense constituted prejudicial error. The asserted errors raise neither jurisdictional nor substantial due process issues and were waived by the guilty plea. *United States v. Courtier*, 20 U.S.C.M.A. 278, 43 C.M.R. 118 (1971); *United States v. Lopez*, 20 U.S.C.M.A. 76, 42 C.M.R. 268 (1970); *United States v. Rehorn*, 9 U.S.C.M.A. 487, 26 C.M.R. 267 (1958); *United States v. Henry*, 50 C.M.R. 685 (A.F.C.M.R.1975); *United States v. Pounds*, 50 C.M.R. 441 (A.F.C.M.R.1975); *United States v. Bolton*, 15 C.M.R. 579 (C.G. B.R.1954); *United States v. Feeley*, 47 C.M.R. 581 (N.C.M.R.1973).

■ Another assignment of error urges a violation of Article 33 UCMJ The Article directs that when a person is held for trial by general court-martial, the commanding officer shall, within eight days after arrest or confinement, forward the charges, together with the investigation and allied papers, "if practicable", to the general court-martial convening authority. "If that is not practicable he shall report in writing to that officer the reasons for delay."

Article 33 is a part of the serviceman's right to a speedy trial. "Vindication of that constitutional right is unrelated to the admissions of fact contained in the plea, and therefore can present an independent justiciable issue." *United States v. Hamil*, 15 U.S.C.M.A. 110, 111, 35 C.M.R. 82, 83.

The violation here complained of, and the subject of a motion denied at trial, was the failure to submit a written report explaining why it was impracticable to forward the charges within eight days. In fact the charges and the investigating officer's report were not forwarded until 57 days after the accused had been ordered into confinement; a written explanation was never prepared. However the record itself plainly shows the impracticability of forwarding the charges to the GCM authority within eight days. The violation of Article 33— the failure to report these facts in writing—was merely technical and the accused suffered no real harm. His substantial le-

* See *United States v. Jones*, 7 U.S.C.M.A. 623, 23 C.M.R. 87 (1957).

gal rights were not prejudiced. *United States v. Tibbs*, 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965).

■ We find as a fact that the accused was not denied a speedy trial; the government exercised due diligence in bringing him to trial 71 days after he had been placed in pretrial confinement. Where the accused's right to a speedy trial is infringed, "the remedy is dismissal of the charges . . . Otherwise the accused is afforded no relief." *United States v. Lipovsky*, 17 U.S.C.M.A. 510 at 512, 38 C.M.R. 308 (1968).

■ At the end of the appellate defense brief, an assigned error characterizes the district legal officer's post-trial review of the record as "fatally defective" and as having "failed to provide an impartial review." The appropriate remedy for an insufficient post-trial review is return of the record for a new review and convening authority's action. However, both in the brief and in oral argument, counsel declined to ask that the record be returned for a new review and action.

In our judgment this assignment of error lacks merit. However, the appellant has utilized this assignment of error to again present the question, which had been raised in one of the motions prior to the plea, of cumulative error. Thus the "Conclusion" to the assignment of error and appellant's brief asserts:

> Because of the multitude of errors in this case, it falls within the ambit of cumulative error—under which a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate disapproval of the findings. (citation). Even though the defendant's guilty pleas might ordinarily have precluded appellate review of certain errors, the deficiencies in this trial are so numerous and violated so many of the requirements of the *UCMJ* and *MCM* that to enforce the principle of waiver would result in manifest injustice . . .

Appellant thus asks us to consider not only the alleged deficiencies in the staff legal officer's review, but also all the sup-

posed and real defects in the Article 32 investigation; all the alleged mistakes in the pretrial activities; all the assertedly wrong rulings of the military judge in the preliminary proceedings; together with the inconsequential failure to make a written report on why it was impracticable to forward the charges in eight days; and to hold that they add up to "cumulative error" necessitating disapproval of the finding of guilty. We have omitted mention of one other assigned error which appellant seeks to have counted with the others as cumulative error, and that is the contention that the record of trial is not a verbatim transcript. Although we think that this one assignment of error has merit, entitling the appellant to disapproval of the bad conduct discharge portion of the sentence, we do not think that the assigned errors, including this one, entitle the accused to have the finding of guilty and sentence set aside.

The leading case on cumulative error is *United States v. Yerger*, 1 U.S.C.M.A. 288, 3 C.M.R. 22 (1952) a contested trial, held before the effective date of the *UCMJ* and not presided over or prosecuted by legally trained officers. As a result the record was replete with hearsay testimony and leading questions, and prejudicial error was constituted by the reception of testimony concerning other offenses for which the accused had been convicted at prior courts-martial. But the Court of Military Appeals expressly made, not the latter prejudicial error, but the cumulative effect of all the errors, the ground of reversal. The opinion states:

> . . . the record demonstrates a flagrant disregard for elementary rules of evidence. Isolated and minor errors in receiving hearsay testimony and using leading questions appear in many criminal trials, both civilian and military, and ordinarily such deviations from proper procedure would not be substantially prejudicial and hence would not concern us as an appellate court. "We must guard against the magnification on appeal of instances which were of little importance in their setting." *Glasser v. United States*, 315 U.S. 60, 83, 62 S.Ct.

457, 86 L.Ed. 680. But such is not the situation here. Repeated violations of fundamental rules of evidence, conceived at least partially for the protection of the accused, cannot be condoned.

The cumulative effect of the errors discussed above, each prejudicial inherently and in fact to a greater or lesser degree, requires that we set aside the findings in this case. (citations) In the words of Mr. Justice Rutledge, we " . . . cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, . . ." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557.

█ It has no application to the instant case. Perhaps the most serious claim of error here was the ruling on the confession. Appellate review of the correctness of this ruling was precluded by the provident plea of guilty, as a matter of law. But appellant would have us review the ruling under the assertion of cumulative error. We cannot allow that. If a supposed error is waived by the guilty plea, it cannot be resurrected under the guise of cumulative error. And this holds also for the claim of a defective Article 32 investigation and for all of the other alleged errors which were waived by the plea of guilty. This was not a contested trial and there is no inherently prejudicial error or combination of errors in this case which casts doubt upon the validity of the finding of guilty. We can say with fair assurance that the finding of guilty was not swayed by errors occurring at the trial.

█ As noted above, the assertion that the record is not verbatim is well-founded. It appears that, on the sixth day of the preliminary Article 39(a) sessions, there was a mechanical failure of the recording equipment, so that the entire day's proceedings were not recorded. A clear account of what occurred on that day is summarized on eleven pages of the trial record (R.408 through R.418). The day was occupied with the following matters:

1. The ruling on the motion to suppress the confession together with the judge's detailed explanation of his rationale.
2. The argument of joint motions to disapprove the Article 32 investigation and pretrial advice and dismiss the charges.
3. The argument of a motion to dismiss on the ground of cumulative error.
4. Withdrawal of one specification of Charge I.

Assuming that the eleven-page summary is a full and accurate account, with nothing material omitted, the record still cannot qualify as a verbatim transcript. *United States v. Sturdivant*, 24 U.S.C.M.A. 74, 51 C.M.R. 203, 1 M.J. 256 (1976). A general court-martial record cannot support a punitive discharge unless it has the essential quality of being verbatim. *United States v. Nelson*, 3 U.S.C.M.A. 482, 13 C.M.R. 38 (1953). Since the day's unrecorded proceedings included material matters, they required verbatim transcription; " . . . we are not concerned with the sufficiency of the record for the purpose of review in constitutional terms . . ." *United States v. Sturdivant*, supra.

█ An assignment of error urging that the convening authority was disqualified from referring the case to trial by reason of grants of immunity to Article 32 witnesses, we find not persuasive.

The findings of guilty are affirmed. The error in failing to have a verbatim transcript may be purged by disapproving the bad conduct discharge and approving a sentence which otherwise is no greater than that which could be adjudged by a special court-martial. See *United States v. Thompson*, 22 U.S.C.M.A. 448, 47 C.M.R. 489 (1973); Para. 82*b* MCM 1969. Reassessing the sentence, the Court approves as correct in law and fact, only so much of the sentence as provides for confinement at hard labor for six months, reduction to pay grade E–1, and forfeiture of $200.00 pay per month for six months.

MAGUIRE, YOUNG and LYNCH, JJ., concur.

Judge BRIDGMAN did not participate in the decision in this case.