**UNITED STATES**

v.

**Gary T. PACKER, 578 76 1712, Private First Class (E–2), U. S. Marine Corps.**

**NCM 78 0483.**

U. S. Navy Court of Military Review.

Sentence Adjudged 25 Nov. 1977.

Decided 28 Jan. 1980.

LT Philip G. Cohen, JAGC, USNR, Appellate Defense Counsel.

LT Michael F. Fink, JAGC, USNR, Appellate Defense Counsel.

CAPT Craig L. Kemmerer, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and FERRELL and DONOVAN, JJ.

PER CURIAM:

Appellant pleaded guilty, at a general court-martial, to one specification alleging an indecent assault, in contravention of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. He also pleaded not guilty to one specification each alleging a rape and a breaking and entering of a dwelling room with intent to rape, in violation of Articles 120 and 129, UCMJ, 10 U.S.C. §§ 920, 929, respectively; these charges, however, were withdrawn by the Government, and, pursuant to his plea, appellant was found guilty by the military judge of an indecent assault. The general court-martial members sentenced appellant to be confined at hard labor for 4 years, to

forfeit all pay and allowances, to be reduced to the lowest enlisted pay grade, E–1, and to be dishonorably discharged from the service. The convening authority dismissed the withdrawn charges and specifications and, pursuant to the pretrial agreement, approved only so much of the sentence as provided for a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of all pay and allowances for 1 year and reduction to pay grade E–1.

Twelve assignments of error have been presented to this Court; our resolution of these assignments follows:

I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY, FOR THE MOST PART, DENYING TRIAL DEFENSE COUNSEL'S MOTION TO DISMISS OR IN THE ALTERNATIVE REOPEN THE ARTICLE 32, BECAUSE OF A DEFECTIVE ARTICLE 32 INVESTIGATION.

Our reading of the record of trial does not compel us to conclude that the military judge committed error when he denied appellant's trial motion to dismiss or reopen the allegedly defective Article 32, UCMJ, investigation.

Although the general court-martial authority had not appointed counsel for appellant before the initial investigation hearing, appellant was represented by two well-qualified Navy lawyers who had been originally appointed by an officer qualified to exercise only special court-martial jurisdiction and who were subsequently formally appointed by the proper authority; these same lawyers continued in their zealous defense of appellant throughout the trial proceedings. We are convinced, moreover, that appellant did not desire to have his detailed defense counsel at the second hearing, during which he was represented by the assistant defense counsel, and that appellant showed no desire at either hearing to exercise his rights to be represented by either a civilian counsel or an individual military counsel, even

though properly advised of his rights to have such counsel present.

Furthermore, we do not believe, as appellant contends, that the lawyer who succinctly and perfunctorily advised a Government witness at the hearing not to exercise his Article 31(b), UCMJ, 10 U.S.C. § 831(b), rights, and who also was tasked with advising the non-lawyer investigating officer, formed such a relationship to the Government so as to fall within the prohibitive language of *United States v. Payne*, 3 M.J. 354 (C.M.A.1977).

Appellant successfully argued, before the military judge, that he was denied the opportunity to cross-examine a fingerprint expert, whose sworn statement had been introduced at the Article 32 investigation. Inasmuch as the hearing was reopened to accommodate appellant and cross-examination was conducted, we perceive no prejudice.

■ It must be noted, however, that appellant's plea of guilty effectively waived the alleged defects discussed above, *United States v. Williams*, 1 M.J. 1042 (N.C.M.R. 1976), including those allegations surrounding appellant's representation by counsel and his alleged lack of representation thereof. *See United States v. Courtier*, 20 U.S.C. M.A. 278, 43 C.M.R. 118 (1971). *See also United States v. Blakney*, 2 M.J. 1135 (C.G. C.M.R.1976). This assignment of error, therefore, has no merit either in fact or in law.

## II

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN DENYING TRIAL DEFENSE COUNSEL'S MOTION TO COMPEL THE GOVERNMENT TO RE–REFER THE CHARGES.

The military judge ordered that the Article 32 hearing be reopened to allow appellant to cross-examine a fingerprint expert. The charges were not thereafter re-referred by the convening authority; rather, the military judge was advised that the convening authority had considered the new testi-mony and the addendum to the staff judge advocate's Article 34, UCMJ, 10 U.S.C. § 834, advice letter and that the convening authority reaffirmed his referral of the charges to a general court-martial.

■ The trial forum did not lose jurisdiction merely because the military judge continued the case in order to reopen the Article 32 hearing. As was most recently said by the Court of Military Appeals, in *United States v. Johnson*, 7 M.J. 396 (CMA 1979):

> The prerequisites of jurisdiction are: That the court was convened by an official empowered to convene it; that the membership of the court was in accordance with the law with respect to number and competency to sit on the court; and that the court was invested by act of Congress with power to try the person and the offense charged.

Para. 8, Manual, *supra*. All of these conditions were fulfilled when the court initially convened, and did not change at any time. Article 32(d) specifically provides that "failure to follow [the provisions of Article 32] does not constitute jurisdictional error." In *Humphrey v. Smith*, 336 U.S. 695, 700, 69 S.Ct. 830, 833, 93 L.Ed. 986 (1949), the Supreme Court held "that a failure to conduct pre-trial investigations as required by [the predecessor of Article 32] does not deprive a general court-martial of jurisdiction . . . ." Article 32(d) was enacted to adopt the *Humphrey* view. *United States v. Allen*, 5 U.S.C.M.A. 626, 632, 18 C.M.R. 250, 256 (1955).

We conclude that a defect in the pre-trial investigation does not deprive the court-martial of jurisdiction. Rather, the trial must be postponed until the convening authority determines whether to order a continuation of the proceedings or to dismiss the charges. If he orders the trial to continue, it is not necessary to begin anew.

*Id.* at 397–8 (footnotes omitted). Thus, inasmuch as the court was properly convened, once the general court-martial authority advised the military judge that he "reaffirmed" his original referral there was no

need to "begin anew" for the trial to continue; hence, this assignment of error lacks merit.

### III

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN DENYING TRIAL DEFENSE COUNSEL'S MOTION TO DISMISS OR IN THE ALTERNATIVE GRANT A WRIT OF MANDAMUS ORDERING THE STAFF JUDGE ADVOCATE TO PREPARE A NEW ARTICLE 34 ADVICE PREJUDICIALLY MISLEADS THE CONVENING AUTHORITY ON A MATERIAL MATTER.

Appellant argues that the staff judge advocate misled the convening authority in his advice that appellant was responsible for the victim's rape, contending that the testimony of a Government witness was not as clear as the staff judge advocate represented. We have read the record as well as the Article 34 advice and are of the impression that appellant's assignment of error is factually unfounded. More importantly, however, we believe that this is just the kind of deficiency which is properly waived by a guilty plea, *United States v. Williams, supra*, since the plea to the lesser included offense here admitted as a matter of fact the ultimate issue to which the witness' testimony was relevant, that is, appellant's guilt. *See United States v. Dusenberry*, 23 U.S.C.M.A. 287, 49 C.M.R. 536 (1975).

### IV

THE MILITARY JUDGE ABUSED HIS DISCRETION IN REFUSING TO ENTERTAIN TRIAL DEFENSE COUNSEL'S MOTION FOR APPROPRIATE RELIEF IN THE NATURE OF A MOTION TO SUPPRESS EVIDENCE PRIOR TO THE MATTER BEING INTRODUCED IN THE CASE-IN-CHIEF.

The military judge declined to entertain appellant's motion to suppress evidence until the matter was brought up during the case-in-chief. Appellant argues an abuse of discretion; we disagree.

It is clearly still within the discretion of the military judge as to whether he will entertain a motion to suppress at a prearraignment Article 39(a), 10 U.S.C. § 839(a) session. *United States v. McIver*, 4 M.J. 900 (N.C.M.R.1978). The record here does not support an argument that the military judge abused his discretion by deciding to wait until the matter arose during the presentation of evidence on the merits before hearing the motion. More precisely, however, appellant's subsequent guilty plea waived any possible error the judge may have made in deciding as he did; accordingly, this assignment of error is unmeritorious.

### V

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN DENYING TRIAL DEFENSE COUNSEL'S MOTION TO DISMISS OR IN THE ALTERNATIVE PROVIDE APPROPRIATE RELIEF BECAUSE THE MAGISTRATE RELIED ON EVIDENCE SEIZED DURING AN UNLAWFUL SEARCH AND SEIZURE IN ORDERING APPELLANT DETAINED.

Appellant contends that the magistrate hearing the matter of whether to hold appellant in pretrial confinement relied on fingerprint evidence seized during an unlawful search. We need not, and so will not, reach the question of whether the search was unlawful but will assume, only for the sake of discussion, that it did violate the Fourth Amendment. The issue thus addressed is whether a military magistrate need determine the admissibility, under the Fourth Amendment, of evidence presented to him if he is to consider that evidence in making his decision. We hold that a magistrate need not make such an evidentiary determination and, thus, that the military judge did not err in this case.

The Court of Military Appeals initiated the requirement in the military that a neu-

tral and detached magistrate consider the question of probable cause to detain, and the subsequent inquiries of whether an accused could be and should be detained, in *Courtney v. Williams*, 1 M.J. 267 (C.M.A. 1976); the Court of Military Appeals there recognized the importance of a hearing before an impartial magistrate prior to the deprivation of liberty of an accused who is presumed innocent. The Court of Military Appeals, however, did not set out specific guidelines as to the procedure to be utilized by the various services; the *Manual for Courts-Martial, 1969 (Rev.)* being silent, the services were left to regulate individually.

Although the Court of Military Appeals has several times addressed pretrial confinement more specifically, *see, e. g., United States v. Malia*, 6 M.J. 65 (C.M.A.1978), and *United States v. Heard*, 3 M.J. 14 (C.M.A. 1977), the particular question now before us has not been discussed. We feel, however, that *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the case which prompted the Court of Military Appeals to act in *Courtney v. Williams, supra,* is most relevant and answers the question.

In *Gerstein v. Pugh*, the Supreme Court held that a person arrested and held for trial is entitled to a judicial determination of probable cause for further detention; the Court went on to state that:

> [A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his fami-

ly relationships. See R. Goldfarb, Ransom 32–91 (1965); L. Katz, Justice is the Crime 51–62 (1972). Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e. g., 18 U.S.C. §§ 3146(a)(2), (5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

*Id.* at 113–4, 95 S.Ct. at 863. The Supreme Court found support for this proposition in historical common law. The Court also found historical support for its holding that an *informal* procedure was justified in making a probable determination. The Supreme Court discussed lower court decisions which called for full preliminary hearings, "accompanied by the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses," and found them unnecessary:

> These adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof.
>
> "Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, devel-

oped to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

. . . . . .

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar v. United States*, 338 U.S. [160,] at 174–175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879.

Cf. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. See F. Miller, Prosecution: The Decision to Charge a Suspect with a Crime 64–109 (1969). This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause.

*Id.* at 120–2, 95 S.Ct. at 866–867. (footnotes omitted).

We are satisfied that the Military Magistrate Program would meet with the approval of the Supreme Court, under the rationale of *Gerstein v. Pugh*, as well as meet the standards set in *Courtney v. Williams, supra*, and *United States v. Malia, supra* at 67, a case in which the Court of Military Appeals quoted the above passage, *inter alia*, in support of its holding that "the initial consideration of pretrial confinement must be immediate and does not necessitate an adversary proceeding." *See* SECNAVINST 1640.10 of 16 Aug. 1978, Subj: Department of the Navy Military Magistrate Program. The procedure envisioned by the Military Magistrate Program is informal and is, specifically, non-adversarial; indeed, the rules of evidence are deemed not to apply. SECNAVINST 1640.10, par. 6*b*. The limited inquiry is solely to determine "(1) if there is probable cause to believe that an offense has been committed, and that the service member committed it; (2) if there is apparent court-martial jurisdiction over the service member for the offense involved; and (3) if the service member should continue in pretrial confinement." *Id.* We do not believe that there is either a need or an allowance in such a procedure for primary evidentiary determinations; this is especially true given the exigencies of the naval service, which allow commands to order a member into pretrial confinement without that commander having the benefit of advice from a lawyer on the efficacy of the evidence, and which, more importantly, properly allow, in Marine Corps commands, for a non-lawyer magistrate.

We are certain that both the command and the magistrate will exercise wisdom in their actions, given the serious nature of pretrial confinement. We believe, however, that the proper place for determining any legal questions involving evidence potentially for use at trial is in the courtroom before a military judge. If the case has been referred to a court-martial, then the judge will hear motions for appropriate relief with regard to illegal pretrial confinement at that time, *see, e. g., United States v. Lamb*, 6 M.J. 542 (N.C.M.R.1978), *pet. denied* 6 M.J. 162 (C.M.A.1979); if the case has not been referred, a writ for extraordinary relief may lie. *See Courtney v. Williams, supra* at 268 n. 2. It is not error, however, for the magistrate to consider evidence which may or may not be subject to a later determination by the military judge or other court of inadmissibility under the Fourth Amendment.

Accordingly, this assignment of error lacks merit.

## VI

THE MILITARY JUDGE ERRED TO THE
SUBSTANTIAL PREJUDICE OF AP-
PELLANT IN DENYING TRIAL DE-
FENSE COUNSEL'S MOTION TO
DISMISS OR IN THE ALTERNA-
TIVE PROVIDE APPROPRIATE RE-
LIEF BECAUSE APPELLANT WAS
UNLAWFULLY HELD IN PRE-
TRIAL CONFINEMENT BECAUSE
THE MAGISTRATE (a) WAS NOT A
LAWYER OR JUDICIAL OFFICER;
(b) WAS NOT CAPABLE OF MAK-
ING A PROBABLE CAUSE DETER-
MINATION; (c) DID NOT BELIEVE
PROBABLE CAUSE EXISTED; AND
(d) WAS NOT FAMILIAR WITH THE
STANDARDS FOR RELEASE IF A
FINDING OF PROBABLE CAUSE
WAS MADE.

■ As discussed above, we believe it proper for the military magistrate to be a non-lawyer when a Marine Corps command is involved, SECNAVINST 1640.10, par. 5a, given the needs of that service and given the nature of the Military Magistrate Program. That the instruction requires a lawyer to be assigned for Navy commands is commendable, but we see no rule of law which mandates that a lawyer sit as a magistrate in the military and, seeing no disparity between an accused who might have a layman as opposed to a legally-trained magistrate, we have no objection to this provision. We are thus also of the opinion that the magistrate who sat herein was capable of making a probable cause determination; however, in reading the record of trial, we believe that the magistrate here did misunderstand the standard of probable cause, holding the Government to a lesser standard than probable cause.

The staff judge advocate, recognizing this problem, recommended in his Article 61, UCMJ, 10 U.S.C. § 861, advice that the convening authority purge the error by a meaningful reassessment of the sentence; he opined, however, that:

As the jury considered only legal pretrial confinement in arriving at its sentence, it is clear that the only appropriate remedy is a meaningful reassessment of the sentence by the convening authority. A reduction in the maximum authorized confinement for the offense tried is not the equivalent of meaningful relief for illegal pretrial confinement. Likewise, to merely deduct from the sentence adjudged the period of illegal pretrial confinement is not necessarily considered meaningful relief. Meaningful relief may in a given case require that the punitive discharge awarded be disapproved and/or substantial reduction in confinement and forfeitures. Each case must be evaluated on its merits.

In the present case, the court sentenced the accused to forfeit all pay and allowances, to be confined at hard labor for four years, to be reduced to private, and to be dishonorably discharged from the service. The court considered approximately 86 days of pretrial confinement in arriving at their sentence. The pretrial agreement calls for approving only so much of the sentence as provides for a bad conduct discharge, confinement at hard labor for one year, forfeitures for one year, and reduction as awarded. In view of the seriousness of the offense, i. e., an indecent assault on a female Marine under circumstances as set forth in the stipulation in paragraph 8a, above, and the accused's unsworn statement, it is my opinion that reassessment of the sentence as adjudged by the court members does not require approving any sentence less than is authorized by the pretrial agreement, as the sentence provided for in the pretrial agreement more than adequately protects the accused against error made by the military judge in not instructing the court of the illegality of the pretrial confinement. It is inconceivable that the jury would have sentenced the accused to a sentence less than that provided for in the pretrial agreement had the jury been properly advised as to the impact of illegal pretrial confinement, considering the serious nature of the offense and the circumstances under which the offense was perpetrated. Accordingly, I do not believe the accused was prejudiced.

The convening authority followed his lawyer's advice.

■ The proper remedy for illegal pretrial confinement is to administratively credit appellant, as against an appropriate punishment sentence, for the number of days he spent in illegal pretrial confinement. *United States v. Larner*, 1 M.J. 371 (C.M.A.1976). In this case the confinement adjudged was limited by a pretrial agreement which did not take into account, for all intents and purposes, any illegal pretrial confinement. The reassessment by the convening authority tied the remedy to whether the court-martial would have awarded a sentence less than that which was provided for in the pretrial agreement. His conclusion that they would not was obviously correct in this case; but that is not the test. The intent of *Larner, supra*, and the holding in *United States v. Malia*, 6 M.J. 65 (C.M.A.1978), is to provide a remedy which would reduce the post-trial confinement determined to be appropriate, either by a court-martial or by an agreed limitation, by the period of illegal pretrial confinement. This was not done. Appellant has served his approved confinement as limited by the pretrial agreement and thus administrative credit is no longer available as a remedy. The issue is moot; therefore, we decline relief. *United States v. Brownd*, 6 M.J. 338 (C.M.A.1979); *Hart v. Kurth*, 6 M.J. 237 (C.M.A.1979); *United States v. Taylor*, 6 M.J. 28 (C.M.A.1978) (summary disposition). *But see United States v. Hagler*, 7 M.J. 944 (N.C.M.R.1979); *United States v. Brownd, supra* (Cook, J., concurring in the result).

## VII

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN DENYING TRIAL DEFENSE COUNSEL'S MOTION TO DISMISS BECAUSE HE WAS DENIED HIS RIGHT TO SPEEDY TRIAL WHEN THE ILLEGAL PRETRIAL CONFINEMENT IS CONSIDERED.

■ Appellant contends that his 84 days of illegal pretrial confinement was in fact equivalent to 168 days of legal pretrial confinement, thus triggering the presumption, under *United States v. Burton*, 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971), that he was denied a speedy trial in violation of Article 10, UCMJ, 10 U.S.C. § 810. Appellant cites no authority for this proposition and, indeed, we know of none. The record indicates that the Government exercised due diligence in bringing appellant to trial; accordingly, this assignment of error is devoid of merit.

## VIII

THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING TRIAL DEFENSE COUNSEL'S REQUEST THAT THE CASE BE CONTINUED UNTIL NOVEMBER 30th OR THE SOONEST DATE THEREAFTER.

■ On 22 November 1977, during the Article 39(a) session, trial defense counsel made a motion for a continuance until 30 November, or the soonest date thereafter. Two reasons were offered for the request: (1) the defense did not want to argue their motion concerning court member selection until the Government provided the names of the individuals appointed and (2) the defense had not had sufficient time to marshall responses from potential extenuation and mitigation witnesses. The military judge ordered the Government to provide the defense access to information concerning the selection and commands of the prospective court members, and granted a one-day continuance for this purpose.

Appellant now argues that he had insufficient time to investigate the method of selecting the prospective court-members and had no time to get responses on the extenuation and mitigation letters sent by his counsel to some 30 people. In our recent discussion of military judges and their discretion to give or refuse a continuance, *United States v. Furgason*, 6 M.J. 844, 847 (N.C.M.R.1979), Judge Michel stated that:

It is well-settled that the issue of whether or not a continuance should be granted is a matter resting within the sound discretion of the military judge, that his ruling is a proper subject for appellate review for his abuse of that discretion, and that he remains accountable for any resulting prejudice to an accused's substantial rights. *United States v. Thomson*, 3 M.J. 271 (C.M.A.1977); *United States v. Dunks*, 1 M.J. 254 (C.M.A.1976). A trial judge should err on the side of liberalism in taking action on such a motion where there exists good cause for any ensuing delay. *See Dunks, supra* at 255 *citing United States v. Daniels*, 11 U.S.C.M.A. 52, 55, 28 C.M.R. 276, 279 (1959); *United States v. Nichols*, 2 U.S.C.M.A. 27, 36, 6 C.M.R. 27, 36 (1952). Once he has acted, our scrutiny will be directed to those matters properly before him which bore directly on his final determination. *Cf., United States v. Quinones*, 1 M.J. 64 (C.M.A.1975).

In the case at hand, the military judge opined that the defense had had ample time to collect extenuation and mitigation evidence. Defense counsel indicated that nearly two months had gone by between the time the initial letters were sent out to prospective witnesses and the date of the motion; appellant was waiting not for answers to the initial letters but to follow-up correspondence in the absence of response to the first set. The military judge calculated that the defense had had available over 90 days worth of man-hours in which to obtain this evidence and was obviously of the opinion that, given the length of time appellant already had spent in pretrial confinement, there was no practical purpose which would be served by further delay. The time given appellant to review the background material on the prospective members appears sufficient.

In our review of the matters before the military judge, in application of *Furgason*, we do not see any abuse of discretion and, thus, find no merit in this assignment of error.

## IX

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING TRIAL DEFENSE COUNSEL'S MOTION TO DISMISS BECAUSE THE COURT WAS IMPROPERLY CONVENED BECAUSE OF THE IMPROPER SELECTION OF JURY MEMBERS.

## X

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN NOT HOLDING ARTICLE 25 TO BE UNCONSTITUTIONAL.

Appellant maintains that the military judge erred when he dismissed appellant's motion to dismiss; the basis for this motion was that the court was improperly convened due to an improper selection of the prospective court members. Both the convening authority and his staff judge advocate were called to testify on the motion. The military judge, however, held that the convening authority was aware of the criteria of Article 25, UCMJ, 10 U.S.C. § 825, when he personally appointed members to the court in accord with those criteria. We agree with the military judge.

 It is clear that Article 25, UCMJ, is constitutional. *United States v. Kemp*, 22 U.S.C.M.A. 152, 46 C.M.R. 152 (1973); *United States v. Corl*, 6 M.J. 914 (NCMR 1979); *United States v. Wolff*, 5 M.J. 923 (N.C.M.R.1978); *United States v. Rice*, 3 M.J. 1094 (N.C.M.R.1977). Thus, appellant's assignment of error to the contrary is devoid of merit.

 Turning to the selection process used to choose the members of appellant's court, our reading of the record satisfies us that the convening authority's method satisfied the standard set forth in *Kemp*; the Court of Military Appeals there recognized that:

[T]he convening authority, while charged with the personal responsibility for the selection of court members, must have

assistance in the preparation of a panel from which to choose those members. In order to carry out his function under Article 25, he must necessarily rely on his staff or subordinate commanders for the compilation of some eligible names. In some cases as in *Greene* [20 U.S.C.M.A. 232, 43 C.M.R. 72 (1970)], the subordinate who is to furnish the names of prospective members has been impermissibly misled into believing that only one factor is to be considered in compiling the list. In others, the subordinate properly was left free or told only in the most general way what was to guide him in nominating personnel for court duty. While some may term this a "random selection" of court members, in our view such a procedure amounts to no more than a preliminary screening of available members for the information of the convening authority. Under the provisions of Article 25 the responsibility and duty of selecting those best qualified for service under the standards set forth in the article remain with that officer. *United States v. Crawford* [15 US.C.M.A.] at 47, 35 C.M.R. at 13 (Kilday, J., separate opinion).

The Court of Military Appeals went on to hold that:

> [It] is not error for a convening authority to rely upon his staff and subordinate commanders to nominate prospective court members to be considered by him for ultimate appointment to a particular court-martial in light of their qualifications under the criteria laid down in Article 25 [UCMJ].

*United States v. Kemp, supra* at 155–6, 46 C.M.R. at 155–6. The *Kemp* language was reinforced in *dictum* found in *United States v. Newcomb*, 5 M.J. 4 (C.M.A.1978); discussing the mandate that the convening authority must himself detail military judges and counsel, Judge Perry cautioned that:

> While we now hold that the convening authority must *personally detail* court-martial personnel under Articles 26 and 27, we find no impediment to his receiving staff *assistance* in the *selection* of

those personnel, just as we found no barrier to such aid in the selection of court members under Article 25 in *United States v. Kemp*, 22 U.S.C.M.A. 152, 46 C.M.R. 152 (1973). The fact remains, if the convening authority personally must detail the personnel, then it is *his* decision, regardless of who played what role in helping him make that decision and that is what we believe Congress intended by these provisions.

*Id.* at 7 n. 8.

The convening authority here was given a list of names gathered for him by the staff judge advocate, who utilized senior staff personnel in the nomination of the requested enlisted members; these staff members were advised, in general, to "pick people because of age, experience, maturity, length of service, that sort of thing," and that the nominees should be "spread . . . out among the ranks." Satisfied that the enlisted nominees "were qualified . . . because of their rank and their age and their success in the Marine Corps," the staff judge advocate forwarded the names of the officer and enlisted nominees to the convening authority with the advice that "You are not required to accept these people as members. If you want someone else, we stand ready at any time to change the convening order at your direction"; the convening authority was also advised, pursuant to *Greene, supra*, that he should not "stack the court with high-ranking people." In evaluating the officer nominees, the staff judge advocate testified that he "thought they were qualified just by the basis of fact that they were lieutenant colonels, majors, captains and lieutenants. They had been successful to get that far. . . . I just assumed that someone with that age, rank, experience and ability would have judicial temperament."

The convening authority testified that he personally chose the members of appellant's court, from the list given him by the staff judge advocate, assuming that "my people under me have done a good job in selecting these members." He was not provided with background information on each of the nominees; the convening authority testified that he knew all but one of the officer

nominees but only one of the enlisted nominees. His position, however, was that he had "faith in my SJA and faith in my Battalion Commanders or my personnel officers, to pick the proper people to sit on that court. And I assume they have done their jobs. . . ."

We do not fault the convening authority's faith in his subordinates to nominate a "proper" court, pursuant to the criteria of Article 25, and, indeed, are convinced that a "proper" court was nominated and ultimately personally selected by the convening authority pursuant to Article 25. As did the Court in *United States v. Young*, 49 C.M.R. 133 (A.F.C.M.R.1974), we believe that a convening authority

> may presume that Article 25 standards have been considered and applied by subordinate commanders and staff officers in nominating prospective court members. That being so, it seems to us that a convening authority's exercise of his own opinion is adequately vindicated by his personal appointment of court members in reliance upon the recommendations of subordinate echelons. In those circumstances, the convening authority's opinion does not become any the less his own merely because his mental processes were predominately influenced by the recommendations of others.

*Id.* at 137. We believe that the circumstances surrounding the selection of appellant's court, when viewed as a whole, support the military judge's denial of appellant's motion to dismiss, inasmuch as the court was properly convened and, thus, had jurisdiction to hear appellant's case. Accordingly, this assignment of error is held to be meritless.

## XI

THE MILITARY JUDGE NEGLECTED TO SPECIFICALLY GET ASSURANCE FROM TRIAL DEFENSE COUNSEL THAT THE PRETRIAL AGREEMENT ENCOMPASSED ALL UNDERSTANDINGS OF THE PARTIES.

 Appellant, without citing any authority, contends that the military judge erred by not asking the trial defense counsel if the pretrial agreement encompassed all understandings of the parties. Our reading of the record, however, reveals that this question *was* asked of the assistant defense counsel, who played a principal role in the defense and who, in the trial defense counsel's presence, answered that the written agreement did encompass the entire agreement between the parties.

The trial defense counsel took no exception to the answers given by either the trial counsel, assistant defense counsel or appellant in responding to the question. As an officer of the court, the trial defense counsel had a duty to speak up if he disagreed with the representations made by his assistant and his client; to do otherwise would be to misrepresent himself and his client. We are quite sure that the assistant defense counsel, who was an active and skillful advocate throughout the proceedings, spoke on behalf of appellant, and, implicitly, the trial defense counsel. *See United States v. Dimpter*, 6 M.J. 824 (N.C.M.R.1979). *See also United States v. Harvey*, 6 M.J. 545 (N.C.M.R.1978).

Accordingly, we see no merit in this assignment of error.

## XII

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN ADMITTING PROSECUTION EXHIBITS 1 AND 2 OVER DEFENSE OBJECTION.

 The Government, to rebut appellant's somewhat one-sided unsworn statement, offered Prosecution Exhibits 1 and 2 into evidence; these exhibits, accepted by the military judge, documented appellant's "pro/con" marks for his Marine Corps career. Appellant argues that the Government was limited to rebutting appellant's statements of his good behavior while at boot camp and Camp Pendleton and that the Government could not rebut those statements with evidence of bad behavior

at other times, having chosen not to do so when given the opportunity to present aggravation. We disagree, and are satisfied that paragraph 75c(2) and e, *Manual for Courts-Martial, 1969 (Rev.),* supports the Government's ability to rebut an unsworn statement, which highlights particular good proficiency and conduct marks, with admissible evidence of other similar marks, thus giving the sentencing body a more complete picture of the person about to be sentenced.

Accordingly, this assignment of error lacks merit.

We have reviewed the record and find no errors, assigned or unassigned, materially prejudicial to the substantial rights of appellant. The findings and sentence, as approved below, are thus affirmed.

Chief Judge CEDARBURG and Judge FERRELL and Judge DONOVAN, concur.